Ruffin, Chief Justice.
 

 This bill was filed in October, 1837, for the redemption of a negro slave, named Tom, conveyed as alleged in the Bill, by the plaintiff to the defendant Owen, as a security for the sum of $375, lent by that defendant to the plaintiff. The Bill states, that in January, 1829, the plaintiff was in great need of money and applied to Owen to borrow $325, offering, as a security for the loan, to mortgage the slave mentioned, who was a favorite slave of the plaintiff and of much greater value than thatsum: That Owen replied, that he would not take a mortgage from his own brother; but that he would take an absolute deed for the negro, and that whenever the plaintiff should refund the money advanced, he, Owen, would reconvey the slave; and that .Owen observed that men were apt to underrate their necessities, and advised the plaintiff to take up a larger loan; and, accordingly, the plaintiff received from Owen the sum of
 
 §375:
 
 That the plaintiff thereupon executed to Owen an absolute bill of sale of the slave, and delivered him into his possession; but with a perfect understanding and agreement between them, that the plaintiff might redeem the negro whenever it should be in his power to refund the sum loaned.
 

 The bill further states, that some weeks afterwards the defendant,E. Lewis, a brother of the plaintiff, applied to Owen to exchange the slave Tom, for a slave, named Jupiter, belonging to said Edward; and that Owen informed E. Lewis; that he was bound to permit the plaintiff to redeem Tom, but expressed a willingness to make the exchange, if the plaintiff would consent and provided the said Edward would agree, in case the plaintiff offerred to redeem, to. surrender Tom to the plaintiff and take back Jupiter- in his stead; to all which Edward Lewis assented: That thereupon, at the request of those parties, the plaintiff executed to Ed
 
 *292
 
 ward Lewis an absolute bill of sale for Tom; but with ^ understanding of all concerned, that his right to redeem should not be thereby impaired; and that Tom then went in» t0 the possession of E. Lewis, and hath remained there ever since.
 

 The bill further states, that the plaintiff had been unable to refund the sum borrowed before November, 1836; but that, at that time, he did raise the sum of $375, and tendered the same to Owen, and required him to reconvey
 
 the
 
 slave Tom to the plaintiff and delivei him into his possession, and account for the hires and profits of the slave while held by Owen, or by E. Lewis under Owen; which hires amount to more than the money borrowed find interest thereon; but that ©wen refused to do so, and denied that there was an agreement for redemption and insisted that his purchase was absolute.
 

 The bill after many minute interrogatories, to which each defendant is required to answer, proceeds to pray, that Owen may come to an account with the plaintiff for the said principal money and interest thereon, and for just hires made or that might have been made by Owen or Edward Lewis, and that, upon payment to Owen of the balance, if any, that may be found due on such account, the plaintiff may be let in to redeem his said slave, and Owen decreed to reconvey said negro to the plaintiff; and for general releif. The bill contains no prayer for any relief against Edward Lewis.
 

 Both of the defendants put in answers, That of Edward Lewis admits his belief of the truth of the statements of the bill, in regard to the transactions between the plaintiff and Owen; and also directly admits the truth of those statements, which relate to the transactions to which he, Edward, was a party. He says that Owen informed him, that he had agreed to let the plaintiff redeem Tom; and that it was then agreed between the three, that the exchange should be made of Tom for Jupiter and that the plaintiff should make to said Edward a bill of sale for Tom, instead of the one to Owen, upon the understanding, that the plaintiff might redeem Tom, and, that if he was able to do so, Edward Lewis
 
 *293
 
 should give up Tom to the plaintiff, and Owen should return Jupiter to him, Edward.
 

 The answer further admits that the plaintiff made an absolute bill of sale for Tom to him, Edward, and that he took possession of him and hath had ever since; and that his general hire averaged $65 or $70: And that he then conveyed Jupiter to Owen absolutely and put him in his possession. The answer then states, that this defendant has always been and now is ready and willing to perform the contract on his part, and to give up Tom to the plaintiff and take back Jupiter, if Owen will return him or be answerable for his value.
 

 The answer of Owen admits that in January, 1829, the plaintiff applied to him for a loan, but of what sum he does not recollect, and offered to mortgage the slave Tom as a security. The answer then sets forth that this defendant refused to lend the money; and that, thereupon, the plaintiff said, he was obliged to sell the negro to pay his debts, and proposed to sell him to Owen for $500, which, the plaintiff stated, some other person had offered for the negro: But that Owen thinking the price too high, refused to give it; and the plaintiff, saying that the negro .wished to be sold to this defendant, finally agreed to take the sum of $375, which he, Owen, then paid to the plaintiff, who, thereupon, made to Owen an absolute bill of sale, The answer then states that after the transaction was closed, as just mentioned, the plaintiff asked as a favour that Tom might remain at his house a few days to help in some work, to which the defendant readily assented; but that, preferring to provide another hand for him rather than allow the plaintiff to retain possession of the slave he had sold and conveyed to him, he, Owen, in a short time stated this difficulty to plaintiff, and gave him $20 to enable him to hire another hand4and required him to send Tom home to him, Owen; which was done immediately. The answer then states explicitly, that “ no mortgage was contemplated, no money lent or borrowed, no agreement for a mortgage, but a sale to the defendant at the price of $375, and a bill of sale executed which expressed truly the transaction as an absolute purchase by the defendant.” The answer proceeds then to admit that
 
 “
 
 hearing
 
 *294
 
 the plaintiff express much regret at parting from the slave, an<^ sa^s^e<^ riiat the price was the full value, he, this defendant, told plaintiff, he would permit him to redeem the negr0t But this was a voluntary declaration after every thing was concluded; for, at the execution of the bill of sale, there was no contractor understanding that the bill of sale should operate otherwise than, on its face, it purported. But that, having told the plaintiff he might redeem, he felt bound in honour and morals by his declaration, and that he would at any time,, while he held Tom, have permitted his redemption.”
 

 The answer then sets forth, that, within a few days after he took Tom into his possession, the plaintiff and his brother Edward, the other defendant, applied to this defendant to let Edward have Tom in exchange for the boy Jupiter, mentioned in the bill: That Tom was then about 30 years of age and a strong hearty man, and much more able to do heavy work than Jupiter, who was about
 
 If
 
 years old; but that the defendant, to oblige those persons, assented to the proposal, supposing that ultimately Jupiter might be as useful to him as Tom, though he was not then so much so, and, certainly not worth more than the money he had given for Tom: That after coming to an agreement, it was thought unnecessary to have three deeds, when two would answer; and he therefore surrendered to the plaintiff the bill of sale he had made to him, Owen, and, thereupon, the plaintiff executed another absolute bill of sale to the other defendant, Edward Lewis, for Tom, and said Edward made a like deed to Owen for Jupiter; both of which were attested by a person, who, after proving them, died, and was the only person present besides the parties. The answer then states that, after those transactions had been consummated, this defendant stated to Edward Lewis in the presence of the plaintiff, that it had been his, Owen’s, intention to let the plaintiff redeem Tom if he could. But it denies positively, that there was one word said at any time about the redemption of Jupiter, under any possible circumstances; and avers that this defendant would not have consented to the exchange upon any such
 
 *295
 
 terms: And as to the redemption of Tom, if the plaintiff could have, according to the course of the court, claimed same against this defendant before the said exchange, (which the defendant avers he ought not) the answer insists that, by that exchange and the conveyances executed to carry the same into execution, that became a matter, in regard to the slave Tom, altogether between the plaintiff and the other defendant, and could not concern this defendant.
 

 The answer further sets forth, that the parties lived near to each other in the County of Bladen, and that the defendant kept Jupiter on his plantation there until the year 1834; and that then with the knowledge of. the plaintiff and of E. Lewis, he removed him, and a large number of other slaves, to a plantation in Mississippi, on which he remained until the winter of 1836, when the defendant sold the plantation and negroes; and that during all that period and up to the month of November preceding the filing of the bill, neither the plaintiff nor the other defendant intimated any claim to Jupiter or any demand in the premises against this defendant; and none would then have been made, as the defendant believes, but for a sudden and very great rise in the price of slaves.
 

 In support of his case the plaintiff has taken some proofs. Daniel McLain states, that in January, 1829, the plaintiff mentioned to him, that he would be compelled to sell Tom, and he, the witness offered him the price of $500 for the negro; but the plaintiff declined the .offer, and said that Owen had told him a few days before; to bring him the negro and that he would let him have money to answer his purpose and give him a chance to redeem the negro.
 

 David Lewis states; that he attested a bill of sale from the plaintiff to Edward Lewis-for Tom,-and understood from those parties, but not irom Owen, that Owen had agreed that, on the payment of a certain sum of money by the plaintiff to Owen, he would deliver Jupiter to Edward Lewis; and on such delivery, Edward Lewis would deliver Tom to Owen for the plaintiff.
 

 The plaintiff also took the depositions of the defendant, Edward Lewis; and in them he repeats, substantially, the
 
 *296
 
 statements of his answer. These depositions were taken without any order for the examination of the party; and for that reason, and because the witness is interested in the matter to which he is examined, the other defendant objects to the reception of his evidence.
 

 On the part of the defendant Owen, it is proved satisfactorily, that in 1829 there was a depression in the price of slaves, and that $400 was the usual price of prime men; that the value of Tom was between four and five hundred dollars; but that §400 was the full value, if not more than the full value, of Jupiter; and that this defendant’s preparations to carry Jupiter and other slaves to Mississippi were notorious in the neighborhood, and must have been known to both the Lewises. In November, 1836, Jupiter would have sold for §1,000. ,
 

 We have seldom had a case with fewer cl aims to the favorable consideration of the court than the present seems to be, either regarded upon its merits, or in the state to which the plaintiff has brought his case from the mode of conducting it.
 

 If we enquire into the Character of the transactions whether they were purchases or securities, and upon all the. evidence in the cause, there seems to be only the most slender grounds for. even suspecting them to be of the latter kind. In the first place, the conveyances were absolute; and that of itself is conclusive on this point, unless there be cogent and clear proof to the contrary, and something like mistake or fraud or undue advantage in getting such a conveyance is established, as well as some evidence, that the parties have acted in the business as Upon a mortgage.— Where the inference from the form of the written contract is confirmed by the answer, the impugning evidence must, indeed, be very strong. In the present case, the answer of Owen is full, positive and precise; that his contract for each slave was a purchase and not a security; aiid on those points it is directly responsive to the allegations and interrogatories of the bill, and is therefore evidence for that defendant/ which must stand, unless overborne by the testimony of two witnesses, or its equivalent. Here, there is but the testimo
 
 *297
 
 ay of a single witness, Edward Lewis, and he having a strong; bias and a plain interest in the question. The form of the deed is5 indeed, not conclusive. The argument from it may be answered by a variety of circumstances; as, if the price was grossly inadequate, or, though the inadequacy were not gross, if the state of the possession indicated a continuing interest in the apparent vendor, or if what was called the purchase money was secured by the bond of the vendor, or interest was paid or the like: then the court will scrupulously scan the whole transaction, and prevent the oppression, of a needy and distressed man. Now, admitting that an argument might have been made for the right of the plaintiff to redeem his slave from Owen upon the admissions of the answer, had the case rested upon the original contract between the plaintiff and Owen; yet it is impossible there can be any obligation upon the defendant, Owen, to give up to the other defendant the slave, Jupiter, or, in any manner to answer, in respect to him, to the plaintiff. There is an absolute deed, with a denial by the defendant of any understanding to qualify it; a full price for the absolute purchase; immediate possession taken in accordance with the deed; no covenant or security for the money advanced; possession, continued eight years, and the negro sent to a distant State with the knowledge of the pretended mortgagors, and without any objection from them. These are facts which are not and cannot be questioned; and they are perfectly inconsistent with the claims set up by the plaintiff and the other defendant. The case really carries the air of collusion betweeen the plaintiff and the defendant Edward,' to charge the other defendant Owen, chiefly, if not entirely, for the benefit of his co-defendant. Upon the face of the bill, the plaintiff cannot have
 
 his
 
 relief against Owen; at all events not, in the first instance. The bill admits that Owen restored to the plaintiff the title the plaintiff conveyed to him, and that the plaintiff then conveyed by a new deed to Edward Lewis; but it says, it was understood between the three, that the plaintiff might still redeem, and that, upon his doing so, Owen should return Jnpiter to Edward Lewis. Now, suppose all that to be true, from whom is the plaintiff to redeem; to
 
 *298
 
 get his re-conveyance; to look for an account of the profits? ^rom Edward Lewis alone; for in him is the title, and he alone has had the possession of the slave, and the benefit of his labor. He does not claim under Owen, but directly under the plaintiff. Therefore, there is no ground of relief to the plaintiff against Owen; but if any one can claim such relief, it must be Edward Lewis, and he alone. As to the slave Tom, the question lies exclusively between the two Lewises, and Owen has no concern in it.
 

 But the case is not even as strong for the' plaintiff upon the merits, as it would appear to be, from the manner in which it has hitherto been considered. For the evidence of Edward Lewis must be rejected, and when that is put out of the case, there may be said to be no evidence left. There are several objections to the reading of his deposition.
 

 He has an interest to subject his co-defendant. He admits in his answer; that the plaintiff has a right to redeem the negro from him, and submits that he may do so. But he sets up-a claim, in that case, to have his slave
 
 Jupiter back.
 
 It is obvious, that this last is the real question in the cause; and that it is exclusively between the two defendants. To establish the agreement on that head, surely, Edward Lewis is incompetent; Since he is to have the benefit of it.
 

 But there is another sufficient objection to his deposition; which is, that there was no order for his
 
 examination. Without
 
 an order, the plaintiff cannot read the deposition of a defendant, even to points, oii which the witness has no interest.
 
 Mulvany
 
 vs. Dillon, 2 Ball. & Bra. 413.
 

 But if all this was otherwise, the plaintiffhas
 
 excluded
 
 himself'from relief against Owen, by having given up his right to a decree against Ed ward Leivis. As has just been said, it is obvious from the nature and state of the Case, that the plaintiff’s decree ought, and must have been against the defendant Lewis, that
 
 he
 
 convey Tom to the plaintiff and come to an account. Now, although there may be a decree against a defendant upon matters distinct from those on which he was examined as a witness, yet examining a party is an equitable release as to the matter to which he is examined, and no decree touching such matter can be made against the witness.
 
 *299
 
 Here the plaintiff has examined the witness to his whole case. It follows, that if no decree can be made against him, none can be made against another party, who is bound to answer only after the witness, who is thus discharged. If the party examined be the one primarily liable to the plaintiff and the other party only secondarily, the plaintiff necessarily gives up his claim against both, by the examination of the former.
 
 Thomson
 
 vs.
 
 Harrison,
 
 1 Cox’s Ca. 344.
 
 Meedbury
 
 vs.
 
 Isdole,
 
 9 Mod. 438.
 

 In whatever light, therefore, the case be viewed, it is not made out, and the bill must be dismissed with costs to the defendant Owen.
 

 Per Curiam. Decree accordingly.